IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

LUDVINA MELÉNDEZ DE JESÚS, ET AL.,

Plaintiffs

v.

WYETH PHARMACEUTICALS CO.,

Defendant

CIVIL NO.:   09-1353 (ADC/MEL)

## REPORT AND RECOMMENDATION

### I.   PROCEDURAL BACKGROUND

Ludvina Meléndez de Jesús and Marta Y. Rivera Ortíz ("plaintiffs") allege that they were denied benefits from Wyeth Pharmaceuticals Co. ("defendant") through the Wyeth Transition Benefit Plan ("WTBP") because of refusing to waive a claim for past due wages which was already pending in Puerto Rico court. (Docket 1-2 ¶13.) Plaintiffs then filed suit against defendant in Guayama Superior Court on February 17, 2009 for claims of double the amount of the separation benefits, moral damages, and retaliation for a protected activity under P.R. LAWS ANN. tit. 29 § 194. (Docket 1 at ¶¶ 24, 27.)

Defendant timely removed the case under federal question jurisdiction. (Docket 1.) Defendant claims that removal was proper because the WTBP is an employee benefit plan governed by the Employee Retirement Income Security Act ("ERISA"). (Docket 1 at 2-5.) On May 5, 2009, defendant filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) stating that: (1) plaintiffs have not alleged that they exhausted their administrative remedies as required by ERISA; and (2) plaintiffs' claim should be dismissed because Wyeth is not the proper defendant in the present case. (Docket 8.)

On May 18, 2009, plaintiffs a filed a motion to remand claiming that: (1) removal was not

proper because the WTBP plan is not an ERISA plan; and (2) even if it is an ERISA plan, plaintiff is not suing for benefits but for moral damages and retaliation for a lawful act under Puerto Rico law. (Docket 13.)

## II.   LEGAL ANALYSIS

### A.   Standard of Review on Motion to Remand

"Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties." 28 U.S.C. § 1441(b); Rosello-Gonzalez v. Calderon-Serra, 398 F.3d 1, 10 (1st 2004). Once a suit has been removed from state court, the case is to be remanded if it was "removed improvidently and without jurisdiction." Ochoa Realty Corp. v. Faria, 815 F.2d 812, 815 (1st Cir. 1987) (citing 28 U.S.C. § 1447(c)). For purposes of this statute, Puerto Rico is equivalent to a state. Id. "A district court confronted with a matter of subject matter jurisdiction reviews a plaintiff's complaint not to judge the merits, but to determine whether the court has authority to proceed." BIW Deceived v. Local Union S6, Indus. Union of Marine & Shipbldg. Workers. Of Amer., IAMAW Dist. Lodge 4, 123 F.3d 824, 832 (1st Cir. 1997).

### B.   Employee Benefit Plans Under ERISA

When a federal statute wholly displaces a state cause of action through complete preemption, the state claim can be removed to federal court. Aetna Health Inc. v. Dávila, 542 U.S. 200, 207 (2004). ERISA completely preempts state law; therefore, "if an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B)." Aetna, 542 U.S. at 210. In such a case,

2

Meléndez de Jesús et al. v. Wyeth Pharmaceuticals Co.
Civil No.09-1353 (ADC/MEL)
Report and Recommendation

§ 502(a)(1)(B) converts a state law claim into a federal claim for purposes of determining federal jurisdiction. Aetna, 542 U.S. at 209.

To determine whether the state law is preempted by ERISA, thus conferring federal jurisdiction, the court must determine whether the plan at issue is an "employee benefit plan" within the scope of ERISA. see Rosario-Cordero v. Crowley Towing & Trans. Co., 46 F.3d 120, 124 (1st Cir. 1995). "The terms 'employee welfare benefit plan' and 'welfare plan' mean any plan, fund, or program which . . . [is] established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing [certain benefits] for its participants or their beneficiaries, through the purchase of insurance or otherwise." 29 U.S.C. § 1002(1). A plan must be evaluated in terms of Congress' purposes in enacting ERISA. Fort Halifax Packing Co. v. Coyne, 482 U.S. 1, 8 (1987). Congress' primary concerns were to prevent mismanagement of funds earmarked for employee benefits, to permit employee monitoring of those funds, and to ensure that employers keep their promises concerning benefits. New England Mut. Life Ins. Co., Inc. v. Baig, 166 F.3d 1, 3 (1st Cir. 1999). Courts must "evaluate a purported . . . plan as a unified whole." O' Connor v. Commonwealth Gas Co. 251 F.3d 262, 268 (1st Cir. 2001).

An employee benefit must be considered a plan for purposes of ERISA only if it requires the undertaking of a continuous administrative and financial obligation by the employer for the benefit of the employee. Belanger v. Wyman-Gorman Co., 71 F.3d 451, 454 (1st Cir. 1995) (citing Fort Halifax, 482 U.S. at 12). The administration of the plan should be such that it requires individual determinations of eligibility which "are based on non-mechanical, subjective criteria that could in their application be subject to employer abuse." O' Connor, 251 F.3d at 268. It has been stated that

3

"no single act in itself necessarily constitutes the establishment of the plan, fund or program."

Belanger 71 F.3d at 455 (quoting Donovan v. Dillingham, 688 F.2d 1367, 1373 (11th Cir.1982) (en

banc)). But, one "crucial factor in determining if a 'plan' has been established is whether the

proffering of an employee benefit constituted an expressed intention by the employers to provide

benefits on a regular and long term basis." Id. (quoting Wickman v. Northwestern Nat. Ins. Co. 908

F.2d 1077, 1083 (1st Cir.1990)). When deciding the issue of whether the employer created or

maintained an employee benefit plan, the court should consider the facts and circumstances from the

perspective of a reasonable employee. Id. (citing Johnson v. Watts Regular Co., 63 F.3d 1129, 1135

(1st Cir. 1995)).

ERISA's protections are unnecessary for cases in which the employer's responsibility is

limited to writing a single check, with no periodic demands on employer assets which create a need

for financial coordination. Belanger, 71 F. 3d at 454; Fort Halifax, 482 U.S. at 12. "If a proffered

benefit does not involve employer obligations materially beyond those reflected in Fort Halifax, the

benefit will not amount to a plan under the ERISA statute. Belanger, 71 F.3d at 455.  In Fort Halifax

Packing Co. v. Coyne, 482 U.S. 1 (1987), a Maine statute required employers to make a one-time

severance payment to employees terminated as a result of a plant closing. 482 U.S. at 5. The

Supreme Court of the United States held that the employer's obligation was not a 'plan' in light of

Congress' purpose because the provision of the benefit did not by nature require an ongoing

administrative plan. Id. at 11-12. An employee benefit plan involving a single payment, however,

may be considered an employee benefit plan for ERISA purposes when eligibility is based on at least

"one non-mechanical criterion, over a prolonged period." See Belanger, 71 F.3d at 455, n. 2 (citing

Meléndez de Jesús et al. v. Wyeth Pharmaceuticals Co.
Civil No.09-1353 (ADC/MEL)
Report and Recommendation

Simas v. Quaker Fabric Corp. of Fall River, 6 F.3d 849, 853 (1st Cir. 1999)). A need to cross

reference other requirements, such as state law, in order to determine eligibility is one example of

a criterion which may form a need for an ongoing administrative program.[1] See Simas, 6 F.3d at 853.

## C.    Application to Plaintiffs' Cause of Action

Plaintiffs argue that the WTBP is not covered by ERISA because: (1) the plan lacks an

administrative scheme as required by Halifax; and (2) no management discretion exists as to the

eligibility of the participants to the severance payments except to apply for it and remain at their post

until their termination date. (Docket 13 at 6.) Defendant argues that Article II of the plan specifically

provides the criteria for eligible and ineligible employees. (Docket 15 at 6-7.) Defendant also points

out that in Article II, Section 2.2 the administrator is clearly given discretion to determine whether

or not an employee is eligible for benefits under the plan. (Docket 15 at 6-7; Docket 35 at 3.) Lastly,

defendant notes that the scheme has been in place over one year and could be perceived as ongoing.

(Docket 15 at 7.)

---

[1] The Massachusetts statute in Simas required a one-time severance payment to employees terminated within certain periods before and after a corporate takeover. Simas, 6 F.3d at 851. Although similar in substance, the Massachusetts law was distinguishable from the statute in Halifax, in that the statute in Simas stated that severance need not be paid to employees who were ineligible for state unemployment benefits. Id. at 853. The requirement that an employee was not terminated for cause was particularly "likely to provoke controversy and call for judgments based on information well beyond the employee's date of hiring and termination." Id.

The court thereafter distinguished Simas from other plans not governed by ERISA, but which also made employees terminated 'for cause' ineligible for benefits. See Rodowicz v. Mass. Mut. Life Ins. Co., 192 F.3d 162, 171 (1st Cir. 1999). In Rodowicz, the appellant likened its early retirement plan to the severance plan in Simas because employees that had been involuntarily terminated were ineligible for benefits. Rodowicz, 192 F.3d 162, 171. Because the plan administrator was able to exclude any employee in his complete discretion, no careful assessment of cause would be required. Id. As the lower court stated in that case, "funneling state law into a plan clearly imposes a greater burden on an employer than (as here) concentrating all decision making authority in a single plan administrator." Rodowicz v. Mass. Mut. Life Ins. Co., 915 F.Supp. 486, 490, n.1 (D.Mass. 1996); see also Rodowicz, 192 F.3d at 171 ("We agree with the district court's determination that, on its particular facts, the Mass Mutual VTP did not constitute an ERISA plan.") (internal quotations omitted).

Meléndez de Jesús et al. v. Wyeth Pharmaceuticals Co.
Civil No.09-1353 (ADC/MEL)
Report and Recommendation

     Employees that may be eligible for benefits under the WTBP are all non-union, full-time employees and part-time employees scheduled to work at least twenty hours per week. (Docket 1-2 at 33.) The plan is funded with money from the company's general assets, and employees are not required to pay anything. (Docket 1-2 at 34.) In order to receive compensation, an employee must have been involuntarily terminated as a result of: (1) a reduction in work force; (2) job elimination; (3) job restructuring; or (4) discontinuance or relocation of operations. (Docket 1-2 at 34.) Additionally, employees must also: (1) execute a written waiver of all claims arising out of the employee's employment with Wyeth; (2) return all company property; (3) hold confidential all proprietary information; (4) not engage in any activity that, in the company's sole discretion, amounts to gross misconduct; (5) continue to be employed through the date assigned by Wyeth as the employee's "work through" or termination date. (Docket 1-2 at 36.) The amount of transition benefit compensation is calculated according to an employee's base salary and years of service. (Docket 1-2 at 36-38.) Benefits are then paid in installments ranging from as few as twelve, to as many as fifty-two weekly payments. (Docket 1-2 at 38.)

     Wyeth may deny an employee benefits for: (1) failing to satisfactorily perform the duties of employment through his or her "termination date"; and (2) termination for cause, as determined by the company in its sole discretion. (Docket 1-2 at 35.) "Termination for cause" includes a variety of acts, such as theft, lying, insubordination, and gross negligence, but may ultimately be for any reason "that the Plan Administrator, in its sole discretion, shall deem appropriate." (Docket 1-2 at 31.) Employees denied transition benefits may make a written request for benefits to the plan administrator. (Docket 1-2 at 45.) If the claim is denied, the employee may make a final appeal the

Meléndez de Jesús et al. v. Wyeth Pharmaceuticals Co.
Civil No.09-1353 (ADC/MEL)
Report and Recommendation

to the plan administrator. (Docket 1-2 at 45.)

Under the WTBP, Wyeth's "benefit obligations are merely a one-shot, take-it-or-leave-it incentive" See O'Connor, 251 F.3d at 267. The WTBP is virtually identical in substance to the early-retirement plan in Rodowicz. See 192 F.3d at 171. Much like the plan in Rodowicz, the WTBP is open to "virtually all full-time employees, with the exception of certain categories of employees set forth in the plan document." See (Docket 1-2 at 33.); 915 F.Supp. at 489. As in Rodowicz, the WTBP contains provisions for an appeals process for employees to challenge a denial of benefits, and an employee is determined to be terminated 'for cause' for any reason that the "Plan Administrator, in its sole discretion, shall deem appropriate." See (Docket 1-2 at 31.); 915 F.Supp. at 489-490 (plan administrator had full and independent authority to exclude employees terminated "for any reason or no reason at all"). Therefore, a disqualifying termination under WTBP does not require a careful determination of "cause" because the plan administrator has sole discretion in determining what exactly a termination for cause is. See Rodowicz, 192 F.3d at 171 ("[A]s the administrator . . . was authorized in his discretion to exclude all employees who had been terminated "for any reason or no reason at all" . . . [n]o careful assessment of "cause" would be required.").[2] Also, unlike the plan in Simas, the WTBP does not require administrators to make exclusion determinations over a period of time. Overall, while WTBP is "somewhat less mechanical and

---

[2] Defendant makes no argument concerning the likelihood that, as the First Circuit Court held in Simas, the determination of whether or not an employee was terminated for cause will cause considerable controversy. Simas, 6 F.3d at 853. The provision that employees terminated for cause may be disqualified from receiving benefits is discussed solely to point out the similarities between the WTBP and the plan in Rodowicz. In considering the severance plan in Belanger, which also excluded employees terminated for cause, the court "apparently felt no compulsion to square that exclusion with the complicated features of the . . . legislation in Simas." Rodowicz , 915 F.Supp. at 490, n.1.

Meléndez de Jesús et al. v. Wyeth Pharmaceuticals Co.
Civil No.09-1353 (ADC/MEL)
Report and Recommendation

unthinking than the Maine statutory scheme in <u>Fort Halifax</u>[,] . . . [it does] not call for the sort of ongoing, individualized determinations necessitated by the . . . statute addressed in <u>Simas</u>." <u>See Rodowicz</u>, 192 F.3d at 172.

Unlike <u>Rodowicz</u>, however, WTBP's benefits are not paid in one lump sum, but are disbursed in several payments over a span of three months to one year. (Docket 1-2 at 38.) This distinction is not substantive to the determination of an 'employee benefit plan' where the plan administrator is not acting as a fiduciary for the employees in ensuring that the funds are available in the future, or in other words, the scheduling of payments does not evoke Congress' purpose in establishing ERISA's protections when the plan administrator cannot exercise discretion over the management of funds. <u>See</u> <u>Belanger</u>, 71 F.3d at 454 ("ERISA's substantive protections are intended to safeguard the financial integrity of the employee benefit funds"); <u>see also</u> <u>Wells v. General Motors Corp.</u>, 881 F.2d 166, 1761 (5th Cir. 1989) (finding that an early-retirement incentive program was not ongoing and there was no need for continuing administration even though employees could elect for payment to be made in installments over a two-year period); <u>O'Connor</u>, 251 F.3d at 271 ("By imposing ERISA's fiduciary obligation on Employers, Congress sought to provide meaningful protection to employee-beneficiaries.") The WTBP does not contain the type of ongoing exercise of discretion required to justify "saddling an employer with fiduciary responsibility and foreclosing an employee's state claims." <u>See</u> <u>O'Connor</u>, 251 F.3d at 271.

In order for the plan to be considered an employee benefit plan it must "[involve] the undertaking of continuing administrative and financial obligations by the employer to the behoof of

8

Meléndez de Jesús et al. v. Wyeth Pharmaceuticals Co.
Civil No.09-1353 (ADC/MEL)
Report and Recommendation

employees or their beneficiaries." Belanger, 71 F.3d at 454 (citing Fort Halifax, 482 U.S. at 12).

Defendant argues that the WTBP could be "reasonably perceived as an ongoing

commitment."(Docket 15 at 7.) The court is required to make that judgment from the perspective

of a reasonable employee. Belanger, 71 F.3d at 455; Watts Regular Co., 63 F.3d at 1135.

    In order to receive compensation under the WTBP, an employee must be involuntarily

terminated as a result of the company restructuring and must not accept employment with another

company prior to his or her termination date.  (Docket 1-2 at 34-35.) According to plaintiffs' sworn

statement, the severance payment was offered to all employees who were to be laid-off, with no

requirements other than signing a release of claims form and remaining at their posts until advised

that they were no longer needed. (Docket 23 at 3, Docket 23-2 at 2-3, Docket 23-3 at 2-3.) The

WTBP can reasonably be perceived to be a program designed to allow Wyeth to proceed through its

transition phase without losing employees who will presumably be looking for other work during

restructuring. From a reasonable employee's point-of-view, the plan might not appear to be an

"expressed intention by the employers to provide benefits on a regular and long term basis," but a

temporary program "solely for the purpose of employee attrition." See Belanger 71 F.3d at 455

(quoting Wickman, 908 F.2d at 1083 (1st Cir.1990)); Crowell v. Shell Oil Co., 541 F.3d 295 (5th

Cir. 2008). As the basis of subject matter jurisdiction was the preemption of Puerto Rico law by

ERISA, a finding that the Wyeth Transition Benefit Plan is not an employee benefit plan under Fort

Halifax  means that the well-pleaded complaint does not require the resolution of a substantial

federal question. Franchise Tax Board v. Laborer Vacation Trust, 463 U.S. 1, 13 (1983). Taken as

a whole, the WTBP does not involve the "continuing administrative and financial obligations

Meléndez de Jesús et al. v. Wyeth Pharmaceuticals Co.
Civil No.09-1353 (ADC/MEL)
Report and Recommendation

representative of an ERISA plan."[3] Rodowicz, 915 F.Supp. at 490. Because the action no longer "arises under federal law," the case should be remanded. See Me. Ass'n of Interdependent Neighborhoods v. Comm'r, Me. Dept., 876 F.2d 1051, 1053  (1st Cir. 1989).

## III.   CONCLUSION

For the reasons explained above, the motion to remand (Docket 13) filed by Ludvina Meléndez de Jesús and Marta Y. Rivera Ortíz should be GRANTED. In view of this conclusion, it is also recommended that Wyeth's motion to dismiss (Docket 8) be deemed MOOT.

IT IS SO RECOMMENDED.

The parties have ten (10) days to file any objections to this report and recommendation. Failure to file same within the specified time waives the right to appeal this order. Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir. 1994); United States v. Valencia, 792 F.2d 4, 6-7 (1st Cir.1986).

In San Juan, Puerto Rico, this 24th day of August, 2009.

s/Marcos E. López
U.S. MAGISTRATE JUDGE

---

[3]Defendant cites Bowles v. Quantum Chemical Co., 266 F.3d 622 (7th Cir. 2001), and Schonholz v. Long Island Jewish Med. Ctr., 87 F.3d 72 (2d Cir. 1996), in support of its argument that the WTBP involves the type of ongoing administrative scheme subject to ERISA coverage. (See Docket 15 at 7.) These cases, however, involved benefit plans that required ongoing recordkeeping, monitoring, and individualized determinations that do not appear to be present in the WTBP. See Bowles, 266 F.3d at 631-32; Schonholz, 87 F.3d at 76-77.